UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STANISLAV EMELYANENKO,

              Plaintiff,

      v.

WILLIAM JOSEPH STRAFACH, et al.,

              Defendants.

Case No. 23-cv-00570-AMO


**ORDER RE MOTION TO COMPEL ARBITRATION, MOTION TO STRIKE, AND PLAINTIFFS' OBJECTIONS TO EVIDENCE**

Re: Dkt. Nos. 45, 61, 64

Plaintiff Stanislav Emelyanenko sues his former employer, Sudo Security Group, Inc., and its chief executive officer and chairman, William Joseph Strafach, for making false promises and representations when recruiting him to join the company and engaging in other wrongful conduct. Defendants move to compel arbitration and dismiss or, alternatively, stay this action. Emelyanenko opposes the motion, moves to strike an errata to one of Defendants' supporting declarations, and objects to evidence Defendants offered for the first time in reply. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court **DEFERS RULING** on the motion to compel arbitration pending further proceedings, **DENIES** the motion to strike, and **OVERRULES** the objections to evidence, for the reasons set forth below.

///

///

///

///

///

United States District Court
Northern District of California

# I.     BACKGROUND

## A.     Factual Background[1]

### 1.     Emelyanenko's recruitment

Sudo is a consumer privacy information technology company headquartered in San Francisco.  ECF 1-2 ("Compl.") ¶ 3.  Strafach is the company's "CEO/President, Director, [and] Chairman of [its] Board of Directors."  *Id.* ¶ 4.  Chirayu Patel is Sudo's Chief Operating Officer.  *Id.* ¶ 5.

Patel approached Emelyanenko in 2018, with an offer to join Sudo as the Senior Vice President of Engineering.  *Id.* ¶ 11.  Between December 2018 and January 2019, Strafach and Patel "made a series of statements in order to illustrate the state of Sudo and the offered employment."  *Id.* ¶ 12.  On January 4, 2019, Strafach gave Emelyanenko an offer letter, "backdating the start date to December 15, 2018, when Plaintiff began to avail himself and his services for employment by Defendants."  *Id.* ¶ 13.  The email attaching the offer letter indicated that Sudo was "in process of raising Series A round," and "[t]he original and consecutive messaging outside of the company resources indicate[d] the same."  *Id.* ¶ 14.  Emelyanenko "relied on this statement when first responding to solicitation by Strafach and Patel, and later in accepting the employment."  *Id.*

"[I]nitial and subsequent messaging indicated having successfully raised a capital [*sic*] in the approximate sum of $1,000,000 from Mark Cuban in the form of [a] Seed Round."  *Id.* ¶ 17.  In 2022, "Patel and the lead investor Stephen Grant Russell" revealed that "[t]his statement was grossly inaccurate."  *Id.* ¶ 15.  The actual amount raised was $100,000-$200,000, not $1,000,000.  *Id.* ¶¶ 17-18.  Sudo "was in a dire financial situation without necessary means to fulfill its obligations to [Emelyanenko]."  *Id.* ¶ 18.  Though Emelyanenko "was under [the] impression that Series A [wa]s being sought when [he was] introduced to . . . Russell[,] . . . Defendants were

---

[1] This background is taken from the allegations in the complaint and the declarations submitted in connection with the pending motion.  *See Lomeli v. Midland Funding, LLC*, No. 19-CV-01141-LHK, 2019 WL 4695279, at *1 (N.D. Cal. Sept. 26, 2019) (drawing on "several sources, including the [c]omplaint and the evidence [d]efendants ha[d] submitted in support of their motions" for the factual background).

seeking a different type of funding, some form of seed level to bridge the financial gaps."

*Id.* ¶ 20.  This left Sudo "unable to provide for the conditions of employment offered and accepted

by [Emelyanenko]."  *Id.* ¶ 22.  But for Defendants' false promises and false representations,

Emelyanenko "never would have worked or partnered with [them] or signed the underlying

contracts."  *Id.* ¶ 44.

2.    <u>The onboarding process</u>

In 2020, Patel hired a third-party provider – Sequoia – to handle employee benefits and

human resources functions for Sudo.  ECF 46 ("Patel Decl.") ¶ 3.  Sequoia provided services to

Sudo from May 1, 2020 to July 15, 2022.  ECF 62-1 ("Schodt Decl.") ¶ 1.  It held open enrollment

meetings to explain the benefits available to Sudo employees.  *Id.* ¶ 4.  Emelyanenko accepted a

calendar invite to one such meeting, scheduled for April 1, 2020:



1    *Id.* ¶ 5 & Ex. 1.[2]  "After the meeting, the employees had to create an account with [Sequoia],

2    which included providing personal information such as . . . social security numbers."  *Id.* ¶ 7.

3    Once an employee created an account, the employee received a document titled "Sudo Security

4    Group Dispute Resolution Policy (Voluntary) – CA Employees."  *Id.* ¶ 8.  The policy reads:



**Dispute Resolution Policy**

Name:  Stanislav Emelyanenko                                          Employee ID:  B42098
Client:  Sudo Security Group

**Sudo Security Group Dispute Resolution Policy (Voluntary) - CA Employees**

[Sudo Security Group] ("Company") and Sequoia One ("PEO") have adopted a Voluntary Dispute Resolution Policy to resolve disputes that may arise between Company employees, on the one hand, and the Company or PEO, on the other hand. Under our Voluntary Dispute Resolution Policy if you sign a Dispute Resolution Agreement, any dispute that you may have with the Company or PEO, or that the Company or PEO may have with you, if not sooner resolved, will be decided by binding arbitration before a neutral arbitrator who will make a decision after hearing the testimony and evidence that you and the Company or PEO provide. This arbitration process will be in lieu of taking the dispute to court, and if you sign the Dispute Resolution Agreement you and the Company or PEO will give up the right to file a public lawsuit and have a jury trial.

There are some important advantages for employees as well as employers in choosing to resolve disputes in binding arbitration as opposed to in a court lawsuit. They include:

• Arbitration is usually faster than a lawsuit in court. A claim can be resolved in arbitration in a few days, while it can take several weeks to complete a jury trial. Among other things, this means you would miss less work time pursuing a claim if you choose arbitration.

• Arbitration is usually confidential and not a part of the public record unless one or the other parties files a challenge in court to the arbitrator's ruling.

• In arbitration, the case is decided by a neutral and impartial person chosen by both sides. The arbitrator is typically a retired judge or a very experienced lawyer. The arbitrator will hear the case and make a decision based on the evidence provided and applicable law.

• In arbitration, you will have the right to be represented by an attorney if you wish, but an attorney is not required.

If you decide not to sign the Dispute Resolution Agreement you will not experience any negative employment consequences, and there will be no retaliation against you.

If you have any questions about this policy or the following Dispute Resolution Agreement, please contact the Company. If you do not receive a timely or complete response, please contact PEO.

Employee's Acknowledgment

I, the employee, confirm receipt of this Voluntary Dispute Resolution Policy.
Stanislav Emelyanenko 04-14-2020 11:14 AM

20   ECF 46-2 ("Dispute Resolution Policy" or "Policy") at 2.  Emelyanenko's name appears at the

21   top, with his employee identification number.  Patel Decl. ¶ 9.  "Each employee . . . would confirm

22   receipt of the Policy, which was time-stamped within the system."  *Id.* ¶ 11.  Emelyanenko

23   confirmed receipt on April 14, 2020 at 11:14 a.m.  *Id.* ¶ 12 & Policy at 2.

24   ///

25   ///

26

27   [2] According to Patel, this document "indicate[s] that Mr. Emelyanenko participated in one of
     [Sequoia's] open enrollment meetings for Sudo."  Patel Decl. ¶ 5.  The Court has not credited this
28   portion of Patel's declaration in ruling on the motion to compel arbitration because the document
     only shows that Emelyanenko accepted the calendar invite.

*United States District Court*
*Northern District of California*

After receipt of the Policy, "each employee . . . received a copy of the "California Dispute Resolution Agreement – Worksite Employee, Sudo Security Group & PEO." *Id.* ¶ 13.  That agreement reads, in part:

> The employee identified below ("Employee"), on the one hand, and Sudo Security Group and Sequoia One ("PEO"), on the other hand (hereinafter individually referred to as "the Party", and collectively referred to as "the Parties"), agree to utilize binding arbitration as the sole and exclusive means to resolve all disputes that may arise between Employee and the Company and/or Employee and PEO. Such disputes include, but are not limited to, claims Employee may bring against the Company for wrongful termination, discrimination, harassment, retaliation, breach of contract, wage and hour violations, benefits claims, and torts such as invasion of privacy, assault and battery, or defamation. Such disputes also include claims that the Company or PEO might bring against Employee such as, for example, theft of money or trade secrets, breach of a confidentiality Agreement, or breach of a contract. Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (whether such claims are based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the California Family Rights Act, the Family and Medical Leave Act, the California Labor Code, the California Wage Orders, or any other local, state, or federal law or regulation), equitable law, or otherwise.
>
> Employee specifically waives and relinquishes their right to bring a claim against the Company or PEO, in a court of law, and this waiver shall be equally binding on any person who represents or seeks to represent Employee in a lawsuit against the Company or PEO in a court of law. Similarly, the Company and PEO specifically waive and relinquish their respective rights to bring a claim against Employee in a court of law, and this waiver shall be equally binding on any person who represents or seeks to represent the Company or PEO in a lawsuit against the Employee in a court of law.

*Id.* ¶ 13 & Ex. 2 ("Dispute Resolution Agreement" or "Arbitration Agreement") at 2.  "To show agreement to the Arbitration Agreement, an employee . . . had to affirmatively click the box at the end of the Arbitration Agreement that appears before the paragraph that starts with the sentence '[c]lick here to indicate that you have read and agree to the terms of the "California Dispute Resolution Agreement" above."  Patel Decl. ¶ 14.  Emelyanenko's name and employee identification number appear at the top of the document:

| Dispute Resolution Agreement | |
| --- | --- |
| Name: Stanislav Emelyanenko | Employee ID:  B42098 |
| Client:  Sudo Security Group | |

California Dispute Resolution Agreement - Worksite Employee, Sudo Security Group, & PEO

Dispute Resolution Agreement at 2 & Patel Decl. ¶ 16.  The box at the end of the agreement is checked:

> ✓
> Click here to indicate that you have read and agree to the terms of the "California Dispute Resolution Agreement" above. By clicking this box, employee confirms the fact that employee has read, understands, and voluntarily agrees to be legally bound to all of the above terms. Employee further understands that this agreement requires the employee and the company or PEO to arbitrate any and all disputes that arise out of employee's employment with company, and/or relationship with PEO, and that employee and the company, or PEO are giving up their respective rights to a trial by jury. Do not check this box until you have read the above acknowledgment and agreement.

*Id.*

Sequoia maintains "an online operating platform . . . that provides, among other things, newly hired employees their onboarding documents and maintains employment records."  Schodt Decl. ¶ 2.  According to its VP of Operations, Dustin Schodt, each platform user "[wa]s required

United States District Court
Northern District of California

to create a personal account that is unique to the individual user . . . . by validating their last name and 9-digit Social Security Number." *Id.* ¶ 3.  If either "d[id] not match the employee's information, the account w[ould] not get created." *Id.*  If both "match[ed] the employee's information, then the account w[ould] get created with the email address that the employee entered and a unique, secure password that the employee set." *Id.*

Sudo employees were required to complete the onboarding process through Sequoia. *Id.* ¶ 4.  To start that process, "a user was required to log in with their user name and password . . . ." *Id.*  Once signed-up, "the user [wa]s required to authenticate their information on Form 1-9, Section 1, including their last name, first name, date of birth, and social security number (if entered) with respect to the identity of the individual who viewed a document and any form of signature or acknowledgment on a document." *Id.*  If any of those "d[id] not match what [wa]s in the system, then the user [would] not be able to continue the onboarding process." *Id.*

Based on his review of Emelyanenko's platform account, Schodt declares the following. *Id.* ¶ 5.  Emelyanenko is a former employee of Sudo.  *Id.*  Sequoia sent him an email "requesting that he set up his user account and . . . complete his onboarding documents on April 14, 2020." *Id.*  Emelyanenko "first created his user account . . . on April 14, 2020, and first logged into his account on April 14, 2020 at 1:00 p.m. Central Time." *Id.*  Emelyanenko "first viewed his onboarding employment documents[,]" including the Arbitration Agreement and the Dispute Resolution Policy, on April 14, 2020.  *Id.*  Attached to Schodt's declaration is a screenshot "listing the documents [Emelyanenko] agreed to as part of his onboarding process on April 14, 2020."  *Id.*  That screenshot is reproduced below:

| Name | Version | Category | Description | File |
|------|---------|----------|-------------|------|
| Dispute Resolution Agreemen... | | Custom Document | Dispute Resolution Agreement | 46. |
| Dispute Resolution Policy_659... | | Custom Document | Dispute Resolution Policy | 32. |
| EmployeeInformation_659_B42... | | Employee Information | EmployeeInformation_659_B42098_Emelyanenko_S_20200414114239 | 1.6 |
| Health Care Notice_659_B420... | | Custom Document | Health Care Notice | 67. |
| Instructions & Deadlines_659_... | | Custom Document | Instructions & Deadlines | 80. |
| Policy Against Harassment_65... | | Custom Document | Policy Against Harassment | 62. |
| Required Handouts_659_B420... | | Custom Document | Required Handouts | 28. |
| Workers' Compensation_659_... | | Custom Document | Workers' Compensation | 27. |
| Worksite Employee Acknowle... | | Custom Document | Worksite Employee Acknowledgement & Handbook | 10( |

6

United States District Court
Northern District of California

*Id.* ¶ 5 & Ex. A.[3]  Schodt declares that on April 14, 2020, Emelyanenko "viewed" both the Dispute Resolution Policy and the Dispute Resolution Agreement, "and electronically agreed to the Dispute Resolution Policy . . . via checking the box on[] the Dispute Resolution Agreement[.]" *Id.* ¶ 7.

Sequoia saved the completed documents on its platform, which "makes available a document to a particular authenticated user and securely obtain[s] an electronic acknowledgment from that user on the document." *Id.* ¶ 8.  "A unique document identification number . . . appears in the name of the document." *Id.*  The document identification number for the Dispute Resolution Policy is 20200414131423, and the document identification number for the Dispute Resolution Agreement is 20200414131432.  *Id.*  Schodt explains "that the unique identification number reflects the date and time (in Central Time) that the employee acknowledged the document." *Id.*  He also declares that the "unique document identification number that appears in the name of the document as well as in the screenshot of such documents . . . confirms" that the copies of the agreements attached to his declarations "are the same documents saved in the document record with respect to [Emelyanenko] on the Platform."[4]  *Id.*

Schodt also provides a copy of Emelyanenko's login history, reproduced below:

| Company Name | Report Name | Selection Criteria | 103.HOR.1 | User Role | Field 2 Date | Category | Description | Process ID | Access | Field 7 Left Just. | Field 8 Left Just. | Field 9 Left Just. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 04/14/2020 | 01:00:32PM | prismhr | HRP.USERS | 71.202.82.31 | success | | |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 04/14/2020 | 01:40:04PM | prismhr | HRP.USERS | 209.58.129.09 | success | | |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 04/14/2020 | 03:32:46PM | prismhr | HRP.USERS | 209.58.129.09 | success | | |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 04/21/2020 | 04:18:59PM | prismhr | HRP.USERS | 71.202.82.31 | fail | 659 | 842098 |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 04/21/2020 | 04:19:36PM | prismhr | HRP.USERS | 71.202.82.31 | fail | 659 | 842098 |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 04/21/2020 | 04:19:54PM | prismhr | HRP.USERS | 71.202.82.31 | success | 659 | 842098 |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 04/21/2020 | 08:55:38PM | prismhr | HRP.USERS | 71.202.82.31 | success | 659 | 842098 |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 05/28/2020 | 08:47:44AM | prismhr | HRP.USERS | 71.202.82.31 | success | 659 | 842098 |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 05/28/2020 | 10:47:02AM | prismhr | HRP.USERS | 71.202.82.31 | success | 659 | 842098 |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 08/31/2020 | 02:24:46PM | prismhr | HRP.USERS | 209.58.129.100 | fail | 659 | 842098 |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 08/31/2020 | 02:29:55PM | prismhr | HRP.USERS | 209.58.129.100 | success | 659 | 842098 |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 05/22/2021 | 01:55:20AM | prismhr | HRP.USERS | 71.202.82.31 | success | 659 | 842098 |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 05/22/2021 | 01:55:48AM | prismhr | HRP.USERS | 71.202.82.31 | success | 659 | 842098 |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 11/15/2021 | 06:37:58PM | prismhr | HRP.USERS | 37.120.215.233 | success | 659 | 842098 |
| Sequoia PEO | Login History Report | Search Login History with Identifier 'stas.em' | by 'Date' by 'Identifier' | stas.em | 11/15/2021 | 06:38:56PM | prismhr | HRP.USERS | 37.120.215.233 | success | 659 | 842098 |

*Id.* ¶ 6 & Ex. B.

///

///

---

[3] The exhibits are attached to the original Schodt declaration, but not the subsequent errata. *Compare* ECF 60-3 *with* ECF 62-1.

[4] Because the list provided does not contain the document identification numbers Schodt references, the Court has not considered this portion of his declaration.

7

**B.     Procedural Background**

On December 21, 2022, Emelyanenko commenced this action against Strafach and Sudo in San Francisco Superior Court, asserting claims for (1) fraud/corporate fraud, (2) securities fraud, (3) breach of contract, (4) extortion, (5) racketeering, (6) unfair competition/business practices, (7) harassment/stalking, and (8) violation of California Government Code § 12900, *et seq.* Compl. ¶¶ 42-102.  Strafach removed the action to this Court on February 8, 2023.  ECF 1.[5]  On March 10, 2023, Defendants filed a motion to compel arbitration.  ECF 24.  On December 28, 2023, the Court denied the motion without prejudice.  ECF 44.

Defendants filed the instant motion to compel arbitration on January 29, 2024, with accompanying declarations from Patel and Strafach.  ECF 45, 46, 47.  Emelyanenko filed his opposition to the motion on March 4, 2024, with his own declaration in support.  ECF 51, ECF 52. Defendants filed their reply on March 25, 2024, with supplemental declarations from Patel and Strafach and a declaration from Schodt.  ECF 60.  On April 1, 2024, Emelyanenko filed objections to that evidence.  ECF 61.  Defendants filed an errata to the Strafach declaration on April 3, 2024. ECF 62.  On April 24, 2024, Emelyanenko moved to strike the errata and the Schodt declaration, including his own declaration in support.  ECF 64, 65.  Defendants filed their opposition to the motion on May 8, 2024.  ECF 68.  Emelyanenko filed his reply in support of the motion on May 15, 2024, again including a declaration of his own in support.  ECF 69, 70.

## II.     LEGAL STANDARD

"The Federal Arbitration Act ('FAA') governs motions to compel arbitration."  *Longboy v. Pinnacle Prop. Mgmt. Servs., LLC*, --- F. Supp. 3d ----, ----, 2024 WL 815550, at *3 (N.D. Cal. Feb. 23, 2024) (citing 9 U.S.C. §§ 1, *et seq.*).  In deciding such a motion, the court must consider two "gateway issues."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted).  First, "whether a valid agreement to arbitrate exists."  *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  Second, "whether the agreement encompasses the dispute at issue."  *Id.*  "If

---

[5] The notice of removal indicates that Sudo, and that Strafach, as a former corporate officer of the entity, consents to removal.  ECF 1 ¶ 13.

United States District Court
Northern District of California

1    the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v.*

2    *Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Chiron*, 207 F.3d at

3    1130).

4         In determining the existence and validity of an agreement to arbitrate, "a court applies a

5    standard similar to the summary judgment standard of [Federal Rule of Civil Procedure] 56."

6    *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (internal quotation marks

7    omitted).  If "a district court concludes that there are genuine disputes of material fact as to

8    whether the parties formed an arbitration agreement, the court must proceed without delay to a

9    trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues

10   have been resolved." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021).

**III.    DISCUSSION**

12        Because the Court applies a summary judgment standard in deciding the pending motion to

13   compel arbitration, *see Concat LP*, 350 F. Supp. 2d at 804, the Court first addresses

14   Emelyanenko's motion to strike and his objections to evidence before turning to the underlying

15   motion.

16        **A.    Motion to Strike**

17        Emelyanenko moves to strike Defendants' errata to the Schodt declaration.  ECF 64

18   ("MTS").  The errata revises the original declaration to include the language: "I declare under

19   penalty of perjury that the foregoing is true and correct and that this declaration was executed on

20   April 2, 2024."  ECF 62 at 1; ECF 62-1 at 4.  The declaration previously stated: "I declare that the

21   foregoing is true and correct."  ECF 60-3 at 4.  The use of an errata to make this type of correction

22   is appropriate.  *See Kaplan v. Seterus, Inc.*, No. 16-CV-02940-JCS, 2017 WL 3478801, at *9 n.8

23   (N.D. Cal. Aug. 14, 2017) (finding that an errata properly cured failure to attest that declaration

24   was made under penalty of perjury).

25   ///

26   ///

27   ///

28   ///

United States District Court
Northern District of California

1    The Court rejects the Emelyanenko's arguments to the contrary.  He argues that:

2         Errata sheets are designed to correct errors and can't be used as a
3         do-it-over tool especially after-the-fact.  Defendants presented no
          error to Plaintiff or to the Court.  Defendants did not reveal who is
4         the initiator of the correction/modification.  Plaintiff has never
          agreed to the "correction" and is not going to.  Defendants specify
5         no reason for the "correction."

6    MTS at 3.  The correction made is precisely the type of oversight for which an errata is

7    appropriate, and the reason for the correction is stated on the errata, identifying the page and line

8    number corrected.  *See Kaplan*, 2017 WL 3478801, at *9 n.8.  This is not an inappropriate do-

9    over, it does not require identification of who initiated it, and while parties should be able to

10   resolve these types of issues by stipulation, consent is not required to make the correction at issue

11   here.  *See id.* (stating that "[u]nless a party *refuses* to provide a properly sworn declaration, the

12   Court expects this sort of oversight to be resolved through communication and stipulation, not

13   through evidentiary objections.") (emphasis in original).

14        Emelyanenko's argument that the errata violates Civil Local Rule 7-3(d) also lacks merit.

15   MTS at 3.  With limited exceptions not applicable here, the rule prohibits the filing of "additional

16   memoranda, papers, or letters" once a reply is filed unless the filing party first obtains court

17   approval.  *See* Civil L.R. 7-3(d).  An errata making the limited correction at issue here is not the

18   type of additional memoranda, paper, or letter prohibited by Civil Local Rule 7-3(d).  *See Bias v.*

19   *Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007) (stating that "[n]otices of errata to clarify clerical

20   errors are substantively different from attempts to file supplemental briefs unauthorized by local

21   rules.").

22        Emelyanenko's remaining arguments fare no better.  He argues that he is prejudiced by the

23   errata because Defendants waited "to try to introduce something that's both inadmissible and

24   pretty arguable for the sake of delaying the prosecution of this case," Defendants did not confer

25   with him or try to obtain his consent, and Defendants should have raised the factual contentions in

26   the Schodt declaration in their opening brief.  MTS at 3.  Emelyanenko's claims of prejudice are

27   not persuasive.  As a preliminary matter, other than the argument concerning consent, which the

28   Court has already rejected above, these arguments are not properly directed at the correction made

United States District Court
Northern District of California

10

by the errata.  They attack the substance of the Schodt declaration itself.  Emelyanenko's arguments are thus unpersuasive for this reason alone.[6]  But even if Emelyanenko's challenges to the substance of the Schodt declaration were proper, Defendants may, as here, properly respond to arguments raised in an opposition to a motion on reply.  *See Applied Materials, Inc. v. Demaray LLC*, No. 5:20-CV-05676-EJD, 2020 WL 8515132, at *1 (N.D. Cal. Dec. 16, 2020) (explaining that "evidence submitted with a reply brief is not new evidence when it is submitted to rebut arguments raised in the opposition brief").  For this reason, Emelyanenko is not entitled to prevail on his motion to strike based on the timing of the Schodt declaration or the errata.  Indeed, had that timing somehow prejudiced his ability to oppose the motion to compel arbitration as he contends, he could have sought leave of Court to file a sur-reply, as he did in connection with the prior motion.  *See* ECF 35.

Accordingly, the Court **DENIES** the motion to strike and now turns to the objections Emelyanenko raises to Defendants' reply evidence.

**B.      Objections to Evidence**

Emelyanenko objects to the declarations Defendants submitted with their reply in support of the motion to compel arbitration.  ECF 61 ("Objs.").  The Court addresses each objection in the sequence presented by Emelyanenko.

First, Emelyanenko objects that Schodt's declaration is not made under penalty of perjury in compliance with 28 U.S.C. § 1746.[7]  This objection is **OVERRULED** because, as discussed above, the errata to the Schodt declaration cures the deficiency in the original declaration.  *See Kaplan*, 2017 WL 3478801, at *9 n.8.

Second, Emelyanenko objects that Schodt "doesn't offer his availability to the Court or

---

[6] The Court does not reach Emelyanenko's argument about Sudo's lack of corporate powers, *see* MTS at 4-5, because it is wholly unrelated to the subject of the motion to strike, i.e., whether the errata to the Schodt declaration is improper.  The Court discusses Emelyanenko's attack on the admissibility of the Schodt declaration and challenges to the factual assertions contained in it together with the duplicative evidentiary objections he has raised.

[7] The statute requires that declarations executed in the United States contain an attestation the declarant's statements are true and correct under penalty of perjury.  *See* 28 U.S.C. § 1746.

Plaintiff."  Objs. at 2.  The Court construes this objection as a challenge to the admissibility of Schodt's declaration.  So construed, it is **OVERRULED** because at this stage, the Court "does not focus on the admissibility of the evidence's form so long as the contents are capable of presentation in an admissible form at trial."  *See Lomeli*, 2019 WL 4695279, at *7 (internal quotations and citations omitted).

Third, Emelyanenko objects to the timing of the declaration, arguing that Defendants "elected to submit their largest by volume 'declaration' as part of their [r]eply so that Plaintiff couldn't respond to that."  Objs. at 2.  This objection is **OVERRULED** because, as explained above, Emelyanenko had the option to seek leave of Court to file a sur-reply, as he did in connection with the prior motion to compel arbitration, or object to improper reply evidence, as he has done here.

Fourth, Emelyanenko objects that the Schodt declaration "doesn't shed a light on the relevant issues."  *Id.*  This objection is **OVERRULED** because the factual assertions contained in the declaration bear on whether an arbitration agreement exists.

Fifth, Emelyanenko objects that "Schodt's 'testimony' doesn't establish how the signature records are maintained/perpetuated or other relevant business practices."  *Id.*  The Court construes Emelyanenko's objection as a challenge to Schodt's qualifications to lay foundation for the business records attached to his declaration.  So construed, it is **OVERRULED**.  Schodt declares that he has "personal knowledge regarding . . . the online operating platform for . . . clients and former clients, such as Defendant, that provides, among other things, newly hired employees their onboarding documents and maintains employment records . . . ."  Schodt Decl. ¶ 2.  He also declares that he is familiar with his company's "processes for collecting, obtaining agreement with respect to, and storing employee personnel records."  *Id.*  This is sufficient.  *See Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 514 (9th Cir. 1989) (explaining that "[t]he foundation requirement for Rule 803(6) may be satisfied by the testimony of anyone who is familiar with the manner in which the document was prepared, even if he lacks firsthand knowledge of the matter reported, and even if he did not himself either prepare the record or even observe its preparation.") (internal quotations and citation omitted).

1    Sixth, Emelyanenko objects that Schodt does not support certain assertions in his

2    declaration with business records, citing Civil Local Rule 7-5.  That rule provides:

3            (a) Affidavit or Declaration Required.  Factual contentions
             made in support of or in opposition to any motion must be supported
4            by an affidavit or declaration and by appropriate references to the
             record.  Extracts from depositions, interrogatory answers, requests
5            for admission and other evidentiary matters must be appropriately
             authenticated by an affidavit or declaration.
6

7            (b) Form.  An affidavit or declaration may contain only facts,
             must conform as much as possible to the requirements of Fed. R.
8            Civ. P. 56(e), and must avoid conclusions and argument.  Any
             statement made upon information or belief must specify the basis
9            therefor.  An affidavit or declaration not in compliance with this rule
             may be stricken in whole or in part.
10

11   Civil L.R. 7-5.  The Court **OVERRULES** Emelyanenko's objection because Schodt's declaration

12   does not violate the local rule.

13       Emelyanenko also objects to the electronic DocuSign signature on the Schodt declaration.

14   Objs. at 3.  The objection is **OVERRULED**.  *See Newton v. Am. Debt Servs., Inc.*, 854 F. Supp.

15   2d 712, 731 (N.D. Cal. 2012), *aff'd,* 549 F. App'x 692 (9th Cir. 2013) (explaining that DocuSign

16   is "a company that is used to electronically sign documents in compliance with the U.S. Electronic

17   Signatures in Global and National Commerce Act (ESIGN)" and that "[u]nder ESIGN, electronic

18   records and signatures that are in compliance with ESIGN are legally binding.").

19       Emelyanenko's remaining objections, which are not limited to the Schodt declaration, are

20   **OVERRULED** because Emelyanenko uses the purported objections as a vehicle to dispute certain

21   factual assertions rather than present a basis upon which the Court may properly sustain an

22   evidentiary objection.  For example, Emelyanenko contends that his experience with the

23   onboarding process is different from what Schodt describes in his declaration.  *Id.* at 3.  He

24   contends that he has no record of the email prompting him to begin the onboarding process that

25   Schodt describes in his declaration.  *Id.*  He accuses Defendants of having failed to disclose or

26   destroyed facts and evidence that support his position.  *Id.* at 4-5.  He also raises a number of

27   factual contentions about "undue duress, threats and other forms of oppression" he suffered, about

28   being occupied with "other employment related activities" during the time Defendants claim he

United States District Court
Northern District of California

13

executed the arbitration agreement, about when Defendants had notice of his claims before this lawsuit, and about Strafach "publicly representing himself as [a] 'hacker.' " *Id.* These are not proper objections, and as such, are **OVERRULED**. Having resolved these objections and the motion to strike as set forth above, the Court now turns to the motion to compel arbitration.

### C.       Motion to Compel Arbitration

If "there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen*, 1 F.4th at 672. "[A] court is not authorized to dispose of a motion to compel arbitration until after factual disputes have been resolved . . . ." *Id.* at 671. As discussed below, material factual disputes exist as to whether Defendants waived their right to compel arbitration or breached the agreement such that further proceedings are necessary to resolve the question of arbitrability.

Emelyanenko declares that he delivered an arbitration demand on June 18, 2022. ECF 52 ("Emelyanenko Decl.") ¶ 26. He provided a copy to Patel when he "appeared" at Emelyanenko's residence demanding that he sign "what appeared to be signature pages releasing Sudo and Strafach from liability, as well as giving up [his] equity in Sudo." *Id.* ¶ 39. Emelyanenko declined to sign despite Patel's representations that "those signatures were needed to initiate an arbitration process." *Id.* Patel kept the demand letter, took pictures of every page, and sent them to Strafach. *Id.* Strafach acknowledged receipt. *Id.*

Defendants ignore this evidence, claiming that Emelyanenko does not "provide any documentary evidence to support this claim . . . []or offer any details in the way of times, dates, or the content of such an effort . . . or any evidence showing the demand was shared with Defendants." ECF 60 ("Reply") at 9. Nonetheless, they dispute it. Strafach declares that he "reviewed the arbitration demand that [Emelyanenko] attached to his Opposition[,]" "do[es] not recall ever receiving this arbitration demand," and does not "have any records that show [he] received it prior to [Emelyanenko] initiating this lawsuit." ECF 60-2 ("Supp. Strafach Decl.") ¶ 5.

///

///

Patel declares the same:

> [Emelyanenko] states that I received his arbitration demand.  I reviewed the arbitration demand that he attached to his Opposition.  I do not recall ever receiving this arbitration demand, nor do I have any records that show I received it prior to [Emelyanenko] initiating this lawsuit.

*See* ECF 60-1 ("Supp. Patel Decl.") ¶ 5.

Defendants argue that "[e]ven if [Emelyanenko] had shared the arbitration demand with Defendants[,]" they had no obligation to initiate the arbitration on Plaintiff's behalf.  Reply at 10; *see also* MTC at 21.  The two cases on which Defendants rely for this proposition, however, are inapposite.  In *Shorts v. Parsons Transportation Group*, the agreement at issue provided that "[a]ny party to an employment dispute *may* initiate mediation by filing Mediation/Arbitration Request Form with the Parsons Dispute Resolution Specialist."  679 F. Supp. 2d 63, 68 (D.D.C. 2010).  Unlike the agreement in *Shorts*, the Dispute Resolution Agreement at issue here provides:

> Employee understands that to bring a claim under this Agreement, Employee must provide, by mail or in-person delivery, a written statement of their claim to the Party against whom the claim is being made.  Employee also understands that they have the right to be represented by an attorney in the arbitration of any claim under this Agreement, but Employee is not required to have an attorney.  Employee further understands that Employee must present any claim in arbitration before the statute of limitations expires for that type of claim.
>
> At the beginning of any arbitration process under this Agreement, Employee and the Company or PEO will need to select an arbitrator by mutual agreement.  Such an arbitrator shall be a retired California Superior Court Judge, or another qualified and impartial person that Employee and the Company or PEO decide upon.  In the event Employee and the Company or PEO cannot agree on the selection of an arbitrator, they will select an alternative dispute resolution provider and request from that provider a list of an odd number of potential arbitrators. From that list Employee and the Company or PEO will alternatively strike arbitrators, with the Company or PEO going first, until one arbitrator is left.  That arbitrator shall be the arbitrator who will hear our case.

Dispute Resolution Agreement at 2.  At a minimum, then, assuming Emelyanenko in fact delivered written notice to Defendants as he declares, that would have triggered Defendants' obligation to engage in the selection of a mutually agreeable arbitrator, even if they had no obligation to commence the proceedings as they claim.

United States District Court
Northern District of California

15

1    *Ohio Plumbing v. Fiorilli Construction* is also of little help to Defendants.  In that case, the

2    issue before the Court was whether "a defendant must initiate arbitration proceedings before it can

3    seek a stay of litigation pending arbitration."  111 N.E.3d 763, 770 (Ohio Ct. App. 2018).  That

4    issue is distinct from the one Emelyanenko raises here, i.e., whether Defendants ignored his

5    written arbitration demand.

6            Because the record evidence discussed above presents a genuine dispute of material fact as

7    to whether Defendants waived their arbitration rights or breached the agreement they now seek to

8    enforce, further proceedings are necessary.  *See Hansen*, 1 F.4th at 672.  For this reason, the Court

9    does not reach the remaining arguments in the briefing on the motion to compel arbitration at this

10   time.

11   **IV.     CONCLUSION**

12           For the reasons set forth above, the Court **DEFERS RULING** on the motion to compel

13   arbitration pending further proceedings.  Emelyanenko's objections to evidence are

14   **OVERRULED**, and his motion to strike is **DENIED**.  The parties shall file a joint case

15   management conference statement by no later than noon on October 3, 2024.  In addition to

16   complying with the Standing Order for all Judges of the Northern District of California and this

17   Court's Standing Order for Civil Cases, the parties shall include their respective positions on

18   whether a jury or bench trial, or some other proceeding, is appropriate to resolve the motion to

19   compel arbitration.  The Court will hold a case management conference on October 10, 2024 at

20   10:00 a.m.  If the parties intend to proceed to trial, they shall be prepared to address the anticipated

21   length of trial, the number of witnesses, and scheduling.

22           **IT IS SO ORDERED.**

23   Dated: September 27, 2024

24

25   _____

26   **ARACELI MARTÍNEZ-OLGUÍN**
     **United States District Judge**

27

28